**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4147-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL HERBST,

    Defendant-Appellant.

_____

Submitted July 13, 2020 – Decided July 24, 2020

Before Judges Suter and Natali.

On appeal from the Superior Court of New Jersey, Union County, Law Division, Municipal Appeal No. 6229.

Helmer Conley & Kasselman, PA, attorneys for appellant (Jack J. Lipari, of counsel and on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Timothy Mark Ortolani, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following trial in the Linden Municipal Court, defendant Michael Herbst, was convicted of operating a commercial vehicle in a prohibited lane of travel, N.J.S.A. 39:4-88(e), and speeding, N.J.S.A. 39:4-98. Defendant was assessed a fine of $406 and $33 in court costs on the prohibited lane of travel charge and an identical fine and costs on the speeding conviction. The municipal court doubled the assessed fines because it concluded defendant committed the offenses in a construction zone, N.J.S.A. 39:4-203.5. Defendant appealed and after de novo consideration, the Law Division affirmed defendant's convictions and sentence. We affirm.

## I.

The record discloses the following facts. On July 11, 2018, while on patrol on the New Jersey Turnpike, Sergeant Keith McCormick of the New Jersey State Police observed a tractor trailer operated by defendant traveling at a high rate of speed in the left lane. Sergeant McCormick activated his Stalker laser speed measurement device, which was previously tested for accuracy. The device established that defendant was traveling at 70 m.p.h. The posted speed limit in the construction zone where defendant was driving was 55 m.p.h.

Sergeant McCormick then followed defendant's vehicle from a distance of four car lengths for approximately one-half mile in the left lane through the

A-4147-18T1

construction zone. Sergeant McCormick testified that while he was following defendant, his speedometer indicated he was traveling at 70 m.p.h. and the distance between his vehicle and defendant's did not change. Sergeant McCormick also stated that his vehicle had been recently tested to confirm the accuracy of its speedometer reading.

When Sergeant McCormick stopped defendant, he complained that he was cut-off by another car and made general complaints regarding the condition of the roadway and aggressive drivers. Sergeant McCormick issued defendant two summons for speeding and operating a commercial vehicle in the left lane of travel.

At the municipal court trial, defendant repeated his claim that he was only traveling in the left lane because another car cut him off and he moved into the left lane to avoid an accident and was unable to merge earlier because "people don't let you over." He also testified that while he was originally traveling at 65 m.p.h., he slowed to between 50 and 55 m.p.h. as he drove through the construction zone and moved to the right as soon as he was able. Sergeant McCormick disputed defendant's account in his rebuttal testimony, stated the traffic was flowing, and while there were some vehicles to defendant's right, he was able to merge out of the far-left lane.

A-4147-18T1

After considering the documentary and testimonial evidence, the municipal court issued comprehensive and detailed factual findings to support its conclusion that defendant was speeding through a construction zone in an improper lane of travel based on Sergeant McCormick's observations, his pacing of the vehicle and the results of the laser instrumentation. The court specifically concluded that this was "a case of credibility" and in that regard credited Sergeant McCormick's testimony over that of defendant who claimed he "drove perfect that day."

The court stated Sergeant McCormick was a "very experienced officer," that he had excellent demeanor, was "trying to help the trier of fact," had no animosity to defendant, and accordingly gave "great weight to his testimony" which it listened to "very carefully." The court also found that defendant was aware that he was traveling in a construction zone as signs were posted and it did not believe his testimony that a "car cut him off," specifically rejecting his claim that he "had no choice but to be in the left lane."

As noted, defendant appealed his municipal court convictions and sentence to the Law Division which conducted a trial de novo. The court issued a comprehensive ten-page written opinion affirming defendant's conviction and sentence. In that opinion, the court clearly reviewed and considered the

4

municipal court record, noted and deferred to that court's "well-reasoned credibility findings[,]" and found Sergeant McCormick's "testimony credible and accept[ed] his version of events." In affirming the municipal court's adverse credibility finding regarding defendant's testimony, the Law Division also noted that "[t]his is one of the rare cases where [d]efendant's demeanor comes through on the record" and explained that certain of defendant's testimony was internally inconsistent.

Defendant now appeals the Law Division order, raising the following arguments:

> POINT I
>
> EVIDENCE DID NOT ESTABLISH DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT, ESPECIALLY AFTER DISCOUNTING EVIDENCE ERRANTLY ELICITED BY THE MUNICIPAL COURT; THE LOWER COURT'S FINDINGS WERE INADEQUATE AND ERRANT.
>
> A. As to N.J.S.A. 39:4-88
>
> B. As to N.J.S.A. 39:4-98
>
> C. As to N.J.S.A. 39:4-203.5
>
> D. The Law Division drew errant inferences and made errant findings from the record of the defendant's manner of presenting himself at the municipal court trial.

A-4147-18T1

POINT II

THE LOWER COURTS ERRED IN ADMITTING AND CONSIDERING A SPEED MEASUREMENT OBTAINED THROUGH THE USE OF A STALKER LASER DEVICE.

POINT III

THE MUNICIPAL COURT EXCEEDED ITS PROPER NEUTRAL ROLE IN EFFECTIVELY ASSUMING THE ROLE OF THE PROSECUTOR IN QUESTIONING THE ONLY STATE'S WITNESS AFTER THE PROSECUTOR HAD COMPLETED HIS QUESTIONING CONCERNING THE EVENT OCCURRING IN A CONSTRUCTION ZONE.

POINT IV

BOTH LOWER COURTS ERRED IN ADMITTING EVIDENCE AS TO THE DEFENDANT'S DRIVING HISTORY, AND THE LAW DIVISION ERRED EVEN MORE IN RELYING ON IT IN ITS RULING.

POINT V

THE DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT AND ARTICLE I, PARAGRAPH TEN OF THE NEW JERSEY STATE CONSTITUTION.

II.

An appeal of a municipal court conviction must first be addressed by the Law Division de novo. R. 3:23-8. The role of the Law Division is to make

6

independent findings of facts and conclusions of law based on the record developed in the municipal court. State v. Avena, 281 N.J. Super. 327, 333 (App. Div. 1995) (citing State v. Johnson, 42 N.J. 146, 157 (1964). The Law Division is required to decide the case completely anew on the record made before the municipal judge, "giving due, although not necessarily controlling, regard to the opportunity" of the judge to evaluate witness credibility. Johnson, 42 N.J. at 157; see also State v. Cerefice, 335 N.J. Super. 374, 382-83 (App. Div. 2000). The Law Division judge performs "an independent fact-finding function in respect of defendant's guilt or innocence" and must "make his [or her] own findings of fact." State v. Ross, 189 N.J. Super. 67, 75 (App. Div. 1983).

We review the Law Division's decision employing the "substantial evidence rule." State v. Heine, 424 N.J. Super. 48, 58 (App. Div. 2012). "Our review is limited to determining whether there is sufficient credible evidence present in the record to support the findings of the Law Division judge, not the municipal court." State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005) (citing Johnson, 42 N.J. at 161-62). We owe no deference to the trial judge's legal conclusions. Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)).

7

We have reviewed the record below against defendant's arguments and conclude that the Law Division properly determined the matter and defendant's arguments lack sufficient merit to warrant extended discussion in a written opinion. See R. 2:11-3(e)(2). We offer the following to amplify the reasons for our decision.

We disagree with defendant's arguments in Point I, A-D as there was substantial credible evidence in the record to support the convictions and sentence. Sergeant McCormick's testimony was credited over defendant's that he operated his tractor trailer in the extreme left lane while speeding through a construction zone. And, while the Law Division typically should not make new credibility findings without an opportunity to evaluate a witness, we are satisfied that the Law Division's factual findings are amply supported by the record.

With respect to defendant's challenges in Points II-IV, we note that defendant failed to raise these claims in either the municipal court or the Law Division and are therefore waived. In this regard, we "'decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available' unless the matter involves the trial court's jurisdiction or is of public importance[.]" Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620, 643 (1997) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229,

234 (1973)).  No exception applies here.  For purposes of completeness, however, we have substantively considered defendant's arguments and conclude they are all without merit.

As to defendant's challenge to the Stalker laser instrument reading, we are satisfied that there was sufficient credible evidence in the municipal court record, apart from that reading, to support the determination of the Law Division.  In this regard, we noted that Sergeant McCormick testified that defendant was exceeding the speed limit while he was pacing defendant's vehicle.

We also reject defendant's contention that the municipal court engaged in inappropriate questioning of plaintiff.  A trial judge "may examine a witness regardless of who calls the witness."  N.J.R.E. 614.  "Trial judges are vested with the authority to propound questions to qualify a witness's testimony and to elicit facts on their own initiative and within their sound discretion."  State v. Medina, 349 N.J. Super. 108, 131 (App. Div. 2002) (citing State v. Ross, 80 N.J. 239, 248-49 (1979)).  "The intervention of a trial judge is a 'desirable procedure,' but it must be exercised with restraint."  Ibid. (quoting Village of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 132 (1958)).

Here, the court merely inquired of Sergeant McCormick to clarify his direct testimony that defendant was speeding in an improper lane "in a construction zone." The court engaged in similar clarifying questioning of defendant that he was not speeding and could not merge out of the left lane. We find the court's respectful and direct questioning well within its discretion. Finally, we find defendant's reliance on State v. O'Brien, 200 N.J. 520 (2009), misplaced. The court's questioning here bears no resemblance to the circumstances in that case.

As to defendant's challenge to the court's consideration of his driving history, the State introduced defendant's driving history for impeachment purposes after defendant testified he "obeys traffic laws and [does not] speed." The municipal court explicitly stated it could not, and would not, consider defendant's driving history to establish guilt and there is no support that either the municipal court or the Law Division relied upon any specific prior violation as supportive of defendant's guilt for the charges. Although the Law Division noted defendant's driving history when commenting on defendant's credibility, we are satisfied that the Law Division based its findings on the substantial evidence in the record, specifically, Sergeant McCormick's credible testimony, that supported the convictions and sentence. The municipal court and Law

Division's limited reliance on defendant's driving history was neither plain error nor an abuse of discretion. Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (We uphold the trial court's evidentiary rulings "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide off the mark that a manifest denial of justice resulted." (citations omitted)).

In his final point, defendant maintains that he was prejudiced by the ineffectiveness of his counsel before the municipal court and Law Division. Specifically, he maintains that his: 1) municipal counsel was ineffective for failing to object to the Stalker laser reading, to the introduction of his driving history, for "allowing the judge to become an advocate for the government," and "because his presentation under court questioning was ineffectual"; 2) counsel in the Law Division was ineffective for failing to argue the points raised in the instant appeal, and in failing to argue ineffectiveness of municipal counsel; and 3) both counsel were ineffective for failing to argue necessity as a defense.

"To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of succeeding under the test set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984), and United States v. Cronic, 466 U.S. 648 (1984), which [our Supreme Court] adopted in

State v. Fritz, 105 N.J. 42, 58 (1987)." State v. Preciose, 129 N.J. 451, 463 (1992).

Under the Strickland standard, a petitioner must show counsel's performance was both deficient and prejudicial. State v. Martini, 160 N.J. 248, 264 (1999). Counsel's performance is deficient if it falls "below an objective standard of reasonableness" measured by "prevailing professional norms." Strickland, 466 U.S. at 687-88. In evaluating deficiency, counsel's performance must be reviewed with "extreme deference . . . , requiring 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 689)).

The record before us does not reveal the information necessary to address fully the ineffective assistance of counsel claims. See State v. Morton, 155 N.J. 383, 432-33 (1998) (refusing to decide ineffective assistance claim on direct appeal where record did not reveal why counsel did not call certain witnesses during penalty phase of capital trial); State v. Dixon, 125 N.J. 223, 261-62 (1991) (refusing to decide ineffective assistance claim on direct appeal where record was "inadequate to disclose what reasons of tactics and strategy motivated counsel"). In this regard, certain of defendant's claims involve alleged conduct that lies outside the trial record. See Preciose, 129 N.J. at 460

12

("Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." (citations omitted)).

As to defendant's claim that counsel was ineffective for failing to object to the Stalker laser reading, however, for the reasons detailed in our opinion, even if counsel was ineffective, defendant was not prejudiced as other substantial credible evidence existed to support the speeding charge independent of that evidence. We reach a similar conclusion regarding defendant's claims that his counsel was ineffective for failing to object to the introduction of his driving history, and for "allowing the judge to become an advocate for the government." We decline to address defendant's remaining ineffective assistance claims.

In sum, we affirm defendant's convictions and sentence. Our decision, however, does not bar defendant from reasserting his ineffective assistance of counsel claim in a timely filed PCR petition, except as otherwise indicated in this opinion. See Morton, 155 N.J. at 433 (permitting a defendant to revisit ineffective assistance of counsel claims in a PCR proceeding "despite rejection of these claims on direct appeal"); Preciose, 129 N.J. at 460 ("Ineffective-

assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4147-18T1