232 N.J. Super. 553 (1989)
557 A.2d 1036
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANDREW CAREY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 27, 1989.
Decided April 28, 1989.
*554 Before Judges PETRELLA, GRUCCIO and LANDAU.
Francis X. Moore, Attorney for appellant.
John Kaye, Monmouth County Prosecutor, attorney for respondent (Mark P. Stalford, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
Defendant Andrew Carey pleaded guilty in the Tinton Falls Municipal Court to driving while intoxicated, N.J.S.A. 39:4-50. At sentencing, the State produced a computer printout indicating that defendant was a second offender under the statute. However, a Division of Motor Vehicles (DMV) abstract apparently erroneously listed no prior convictions. Defendant objected to the use of the computer printout, contending it was hearsay and insisted on being sentenced as a first-time offender. The municipal court judge rejected this contention, considered *555 the printout and sentenced defendant as a second offender. Defendant appealed and at the de novo hearing in the Superior Court, Law Division, he again contended the use of the computer printout was improper. The State presented a corrected DMV abstract showing the previous conviction. The Law Division judge accepted the amended abstract and considered it in imposing sentence upon defendant as a second offender as follows: A $500 fine; $15 costs; $100 surcharge; revocation of his driver's license for 2 years; 30 days of community service, and 48 hours incarceration in the Intoxicated Drivers Resource Center.
On appeal defendant contends:
1. The municipal court erred in permitting the State to admit a computer print-out which is hearsay. A Division of Motor Vehicle Abstract is the public document required to enhance the penalties of defendant. Therefore, defendant must be sentenced as a first offender.
2. The Superior Court, Law Division, erred by allowing the State to admit new evidence at a trial de novo.

Preliminarily, we observe that there are two phases to every criminal and quasi-criminal matter: (1) the determination of guilt or innocence and (2) the imposition of sentence. The rules of evidence apply to the former but are relaxed as to the latter. For example, N.J.S.A. 2C:44-4d provides that "[a]ny prior conviction may be proved by any evidence, including fingerprint records made in connection with arrest, conviction or imprisonment, that reasonably satisfies the court that the defendant was convicted." (Emphasis supplied). Our case law likewise provides that "there is no need to restrict the State's presentation at the sentencing hearing to testimony admissible under the strict rules of evidence. The court may consider any evidence which, from its content, nature and manner of presentation is inherently reliable, trustworthy and credible." State v. Merlino, 208 N.J. Super. 247, 264 (Law Div. 1984).
Computer-generated material has reached general acceptance in both the private and public sector and has been used by the courts not only on sentencing matters but as substantive evidence in criminal and civil proceedings. See Admissibility of *556 Computerized Private Business Records, 7 A.L.R.4th 8 (1981). In U.S. v. DeGeorgia, 420 F.2d 889 (9th Cir.1969), a federal criminal prosecution, the court relied upon a computer print-out in support of the testimony of a service manager who testified that all information on vehicle rentals, leases and returns was routinely entered into the computer.
The rules of evidence apply to the determination of the innocence or guilt of defendant, not the sentencing phase where the judge must, of necessity, consider all relevant information in imposing a proper legal and just sentence.[1] As the U.S. Supreme Court said in Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949):
Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations. But both before and since the American *557 colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law. Out-of-court affidavits have been used frequently, and of course in the smaller communities sentencing judges naturally have in mind their knowledge of the personalities and backgrounds of convicted offenders. A recent manifestation of the historical latitude allowed sentencing judges appears in Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. That rule provides for consideration by federal judges of reports made by probation officers containing information about a convicted defendant, including such information "as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant...."
In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. These rules rest in part on a necessity to prevent a time consuming and confusing trial of collateral issues. They were also designed to prevent tribunals concerned solely with the issue of guilt of a particular offense from being influenced to convict for that offense by evidence that the defendant had habitually engaged in other misconduct. A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant  if not essential  to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial. [337 U.S. at 246-247, 69 S.Ct. at 1082-1083; footnotes omitted].
The philosophy of sentencing and the consideration of non-evidentiary matters espoused by Williams was accepted by our Supreme Court in State v. Green, 62 N.J. 547, 566 (1973). There, the court said that the restrictive rules of evidence applicable to a trial should not deny a sentencing judge the opportunity to obtain the information required in performing the task of sentencing. Id. at 566. In State v. Humphreys, 89 N.J. 4, 14 (1982), Justice O'Hern recognized that "[t]he whole person concept authorizes the sentencing court to comprehend in its deliberations a wide range of information that might *558 otherwise be excluded by evidentiary norms." (Emphasis supplied). We hold that the computer print-out authentication was properly used in the sentencing phase of these proceedings.[2]
We also determine that the Law Division judge properly allowed the corrected DMV certified abstract confirming defendant's status as a second offender. The Law Division judge in the de novo proceedings may not enhance the record as to the evidence concerning innocence or guilt. State v. Musgrave, 171 N.J. Super. 477, 479 (App.Div. 1979); State v. Hardy, 211 N.J. Super. 630, 634 (App.Div. 1986). However, when the judge imposes sentence in the de novo proceedings, the enhancement prohibition addressed in Musgrave and Hardy above do not apply since the sentence of defendant must be redetermined by the Law Division judge who has the power to modify, lower or increase the sentence within the limits imposed by law. State v. Mull, 30 N.J. 231, 239 (1959).
Defendant has not denied that this is his second conviction for drunk driving. Rather, his position is that the evidence of the first violation was improperly admitted. To follow that faulty logic would result in the imposition of a legally improper sentence. Clearly, a second conviction of a violation of N.J.S.A. 39:4-50 requires a sentence as prescribed by the Legislature, i.e.:

*559 For a second violation, a person shall be subject to a fine of not less than $500 nor more than $1,000, and shall be ordered by the court to perform community service for a period of 30 days, which shall be of such form and on such terms as the court shall deem appropriate under the circumstances, and shall be sentenced to imprisonment for a term of not less than 48 consecutive hours, which shall not be suspended or served on probation, nor more than 90 days, and shall forfeit his right to operate a motor vehicle over the highways of this State for a period of two years upon conviction.... [N.J.S.A. 39:4-50(a)(2)].
The term "shall" used here indicates that the penalties are mandatory. The judge was compelled to sentence defendant as a second offender. The Law Division judge properly admitted the corrected DMV abstract which only confirmed the accuracy of the computer print-out.
Affirmed.
NOTES
[1] We recognize that there is some debate concerning the term "competent credible evidence" used by the Supreme Court in State v. Roth, 95 N.J. 334, 364-365 (1984). There, proper sentencing guidelines were considered under the new Criminal Code. In using the term "competent credible evidence in the record" the Supreme Court did not challenge the matters considered by the trial judge at sentencing. The court merely stated that the evidence considered was improperly focused. That case instructed trial courts to shift the focus of mitigating and aggravating factors from the defendant to the crime and apply the guidelines accordingly. Id. at 366-367.

Competent means: "Duly qualified; answering all requirements; having sufficient ability or authority; possessing the requisite natural or legal qualifications; able; adequate; suitable; sufficient; capable; legally fit." (Citations omitted). Black's Law Dictionary, 355 (4th ed. 1968).
In State v. Davis, 96 N.J. 611 (1984), the Supreme Court recognized that competency, relevancy and admissibility are separate and distinct evidentiary qualifications. See id. at 617. Competency is only one element of admissibility: A person's testimony may be incompetent because he is unable to accurately communicate. Evid.R. 17. However, the written statement of a competent witness may be relevant but inadmissible due to hearsay restrictions. Likewise, a relevant non-hearsay document may be incompetent because it is no longer legible due to age or decay. Moran v. Feitis, 69 N.J. Super. 531 (App.Div. 1961), certif. den. 36 N.J. 299 (1962).
As applied here, the constraint of "competent credible evidence" found in Roth does not bar the consideration of the computer print-out. The print-out was clear, legible and understandable as well as reasonably trustworthy. (See note 2).
[2] Even if the computer print-out is considered hearsay evidence, it is not automatically rendered inadmissible. Without belaboring the inquiry, we note that this document may qualify under the business records exception to the Hearsay Rule, Evid.R. 63(13). This would be consistent with case law that rendered breathalyzer certifications admissible under the business records exception. See, State v. Hudes, 128 N.J. Super. 589 (Law Div. 1974), and State v. McGeary, 129 N.J. Super. 219 (App.Div. 1974) (where Judge Michels found the exception applicable but refused to admit the certification because counsel failed to lay a proper foundation). Therefore, even if this State only permitted admissible evidence at sentencing, the computer print-out would have been properly considered.